ILLINOIS NATIONAL INSURANCE
COMPANY, Appellant,

v.

Adriana L. PEREZ, Individually and As
Parent and Next Friend of Sherry La-
may Perez and Marcella Marie Perez,
Minors, By and Through their Mother
and Next Friend, Adriana L. Perez, Ap-
pellee.

No. 13–89–238–CV.

Court of Appeals of Texas,
Corpus Christi.

April 5, 1990.

Rehearing Overruled June 22, 1990.

Second Rehearing Overruled
Aug. 31, 1990.

Robert D. Stokes, Falhive, Ogden & Latson, Austin, Frank E. Weathered, Law Office of David J. Dunn, Corpus Christi, for appellant.

Steven Fieldcamp, Fieldcamp & Baiamonte, and Russell H. McMains, Kimberly Hall Seger, McMains & Constant, Corpus Christi, for appellee.

Before NYE, C.J., and BENAVIDES and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

Petitioner, Illinois National Insurance Company, challenges by writ of error the default judgment rendered in favor of respondents, Adriana Perez and daughters. We affirm.

On December 21, 1984, Jose Perez was killed in an industrial accident while working for Everest Minerals Corporation. Petitioner, the workers' compensation carrier for Everest Minerals Corporation, answered respondent's claim, paying worker's compensation death benefits and funeral expenses. On December 12, 1985, respondents filed a wrongful death action against Everest Minerals Corporation, Everest Exploration, Inc., United States Filter Fluid Systems Corporation and U.S.X. Corporation for the death of their husband and father. Petitioner was not named in this third party suit nor did it intervene. Respondents settled and released their third party claims against Everest Minerals Corporation, Everest Exploration, Inc. and United States Filter Fluid Systems Corporation (U.S.X. Corporation, having previously been dismissed as a party defendant, was not a party to the settlement). The trial court entered a judgment including the above-mentioned settlement and releases. As of the date of settlement, petitioner had paid respondents a total of $43,303.00 in worker's compensation death benefits.

Respondents filed suit against petitioner approximately one month later, January 20, 1989, seeking recovery of attorney's fees in the amount of one-third of the past and future subrogation benefits under Tex.Rev. Civ.Stat.Ann. art. 8307 § 6a (Vernon Supp. 1990). Petitioner had not responded to respondent's previous efforts to settle attorney fees on past and future compensation benefits. Concurrently with the filing of this lawsuit, respondents tendered $43,303.00 into the court's registry. The petition was served on petitioner's registered agent for service of process on January 23, 1989. The return was filed on February 1, 1989. Petitioner failed to answer prior to the default judgment hearing on February 15, 1989 and neither appeared nor participated in the hearing.

After hearing testimony from respondents and expert witnesses regarding the issues, the trial court rendered a default judgment against petitioner. The court then allowed respondents to withdraw the $43,303.00 previously tendered into the

court's registry as partial satisfaction of the default judgment. The trial court signed the judgment on February 16, 1989.

Approximately six weeks later, petitioner filed a motion for new trial. The motion was untimely because it was filed twelve days after the termination of the trial court's plenary jurisdiction. *See generally, Corro v. Southwestern Bell Media, Inc.,* 784 S.W.2d 471 (Tex.App.—Corpus Christi, 1989); *Willacy County Appraisal Review Board v. South Padre Land Co.,* 767 S.W.2d 201, 202 (Tex.App.—Corpus Christi 1989, no writ); Tex.R.Civ.P. 306a, 329b(a). Thereafter, petitioner filed this writ of error, asserting four points of error.

■ To successfully attack a default judgment on appeal by writ of error the petitioner must: (a) file the writ within 6 months after the final judgment is signed; (b) be a party to the lawsuit; (c) have not participated at trial; and (d) show error apparent from the face of the record. *Stubbs v. Stubbs,* 685 S.W.2d 643, 644 (Tex. 1985); *McEwen v. Harrison,* 162 Tex. 125, 345 S.W.2d 706, 710–11 (1961); *Barrera v. Barrera,* 668 S.W.2d 445, 447 (Tex.App.— Corpus Christi 1984, no writ); Tex.R. App.P. 45. Petitioner filed a timely writ of error, was a party to the lawsuit, and did not participate at trial; therefore, the controlling issue in this case is whether there was error on the face of the record.

Petitioner asserts by its third point of error that the trial court erred in rendering judgment for respondents because such award violated Tex.Rev.Civ.Stat.Ann. art. 8307, § 6a (Vernon Supp.1990). Additionally, by its fourth point of error, petitioner asserts that the trial court erred in allowing respondents to withdraw the $43,303 from the court's registry.

■ A writ of error constitutes a direct attack on a default judgment and in order for an appellant to prevail in this type of an appeal, the invalidity of the judgment must be disclosed by the face of the record. *Pace Sports, Inc. v. Davis*

*Brothers Publishing Co., Inc.,* 514 S.W.2d 247 (Tex.1974); *Brown v. McLennan County Children's Protective Services,* 627 S.W.2d 390, 392 (Tex.1982); *Jefferies v. Davis,* 759 S.W.2d 6, 7–8 (Tex.App.—Corpus Christi 1988), *writ denied per curiam,* 764 S.W.2d 559 (Tex.1989); *Jaramillo v. Liberty Mutual Fire Insurance Co.,* 694 S.W.2d 585, 587 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); Tex.R.App.P. 45. When reviewing a default judgment on writ of error (where all other procedural prerequisites for entering such a default judgment have been met), the appellate court must only be concerned with: (1) the sufficiency of the pleadings to allege a cause of action for (a) which liability may rest and (b) on which damages ˙may be assessed, (if it is a liquidated claim); or (2) the sufficiency of damage evidence presented, (if an unliquidated claim), to support the default judgment rendered by the trial court. *First Dallas Petroleum, Inc. v. Hawkins,* 727 S.W.2d 640, 645 (Tex. App.—Dallas 1987, no writ); *First National Bank of Irving v. Shockley,* 663 S.W.2d 685, 688 (Tex.App.—Corpus Christi 1983, no writ); *see also, McKanna v. Edgar,* 388 S.W.2d 927, 929–30 (Tex.1965). It is true that if the facts set out in the petition allege a cause of action, a default judgment conclusively establishes the defendant's liability. *Morgan v. Compugraphic Corp.,* 675 S.W.2d 729, 731 (Tex.1984).

■ The record here shows that respondent's pleadings were sufficient to allege the cause of action for which liability and damages might be assessed. By its third and fourth points of error, petitioner improperly raises defenses to its liability, a right which it waived in defaulting, and which does not constitute error on the face of the record. Points of error numbers three and four are overruled.

■ Petitioner asserts by its first and second points of error that respondents had released their causes of action against petitioner and, therefore, respondents' recovery is barred by the doctrine of res judicata[1] and that such does constitute error on

**1.** For a discussion on res judicata see *Marange v. Marshall,* 402 S.W.2d 236 (Tex.Civ.App.—Cor-

pus Christi 1966, writ ref'd n.r.e.).

the face of the record. Petitioner argues that the settlement and release agreement terms negotiated between Everest and respondents released petitioner because it was an "insurer" of Everest Minerals Corporation. We disagree.

The settlement agreement between respondents and Everest Minerals Corporation and Everest Exploration, Inc. (hereafter known collectively as "Everest") provides in pertinent part:

> That for and in consideration of the payment 1. an immediate cash payment of $441,750.00 to Adriana L. Perez and her attorney, Steven W. Fieldcamp; 2. to Sherry Lamay Perez, born January 10, 1974, $1,234.59 per month for life ... and, 3. to Marcella Marie Perez, born March 14, 1983, $2,624.68 per month for life ... by Everest; Adriana Perez, individually and as next friend of the minor children, Sherry Lamay Perez and Marcella Marie Perez, hereby releases and agrees to indemnify *Everest, their* officers, agents, servants, employees, privies, successors, *insurers*, related concerns, and assigns, as the result of an accident which occurred on December 21, 1984 and resulted in the death of Jose Luis Perez.
>
> It is expressly agreed in consideration of the aforesaid payments that Adriana Perez, individually and as next friend of the minor children, Sherry Lamay Perez and Marcella Marie Perez, will defend, indemnify, save and hold harmless *Everest, their* officers, agents, servants, employees, privies, successors, *insurers*, related concerns, and assigns from and against any claims of action or causes of action, which may or could be asserted by Adriana L. Perez, or the minor children, Sherry Lamay Perez and Marcella Marie Perez, against Everest, directly or indirectly, including all derivative claims, liens and unpaid bills relating to the death of Jose Luis Perez. (emphasis added)

In *McMillen v. Klingensmith,* 467 S.W.2d 193, 196 (Tex.1971), the Texas Supreme Court abolished the common law "unity of release" rule, under which a release of one joint tortfeasor fully discharged all remaining tortfeasors. The court held that a release fully discharges only those parties named or otherwise specifically identified therein. Subsequently, the court held that the naming of a general class of tortfeasors does not constitute specific indentification of each member of the class unless the release refers to him by name or "with such descriptive particularity that his identity or his connection with the tortious event" cannot be doubted. *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 419 (Tex.1984). The important policy advanced by this rule is to protect claimants from inadvertently releasing their causes of action against unnamed and, perhaps, unknown tortfeasors. Finally, general, categorical release clauses must be narrowly construed.

The release in question specifically relieves Everest from all liability for the death of Jose Perez. This includes boilerplate release language to achieve that purpose. The release language neither specifically identifies this petitioner, Illinois National Insurance Company, nor does the release describe or connect petitioner to Jose Perez' death so that a reader would unequivocally understand that respondents intended to release both this petitioner and Everest, the named releasee.

A complete examination of the record by us does not reveal any error "apparent on its face." All of petitioner's points of error are overruled.

The judgment of the trial court is AFFIRMED.

### ON MOTION FOR REHEARING

On rehearing, Illinois reargues four of its original points of error. We overrule the motion for rehearing and affirm the judgment of the trial court.

■ Illinois contends that this court erred by failing to address and ultimately hold that the doctrine of *res judicata* precluded the default judgment favoring respondents.

This court addressed the issue of *res judicata* in *Marange v. Marshall,* 402

S.W.2d 236, 240 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.) saying:

> The general principle, announced in numerous cases, is that a right, question, or fact, distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery or defense cannot be disputed in a subsequent suit between the same parties *or their privies, or with another so identified in interest with such person that he represents the same legal right, the same question, the same particular controversy or issue* which has been necessarily tried and finally determined upon its merits by a court of competent jurisdiction in a judgment in personam in a former suit. (emphasis added)

In the initial case, the judgment between respondents and Everest Minerals Corporation (Everest) adjudicated a settlement for the wrongful death of Jose Perez. The present case between Illinois and respondents concerns recovery of attorney's fees under Tex.Rev.Civ.Stat.Ann. art. 8307 § 6a (Vernon Supp.1990) for workers' compensation death benefits paid and future benefits saved from being paid because of the settlement in the previous case. Illinois in its suit does not "stand in the same shoes" as Everest in its suit because the second case does not involve the same legal right, question, or controversy or issue determined by the court in the previous case. The present suit is not barred by *res judicata.*

■ Illinois contends that this court erred by failing to address and subsequently hold that the trial court's rendering of a default judgment for attorney's fees violated Tex.Rev.Civ.Stat.Ann. art. 8307 § 6a (Vernon Supp.1990). Illinois also alleges that this court erred by failing to hold that the trial court improperly permitted respondents to withdraw $43,303.00 from the trial court's registry as partial satisfaction of the attorney's fees awarded to respondents. Specifically, Illinois argues that respondents' recovery of one-third of the present cash value of the future benefits as attorney's fees is not allowable under the statute. Furthermore, Illinois argues that, should such a recovery be proper, the trial court erred in incorrectly awarding attorney's fees based upon the total settlement award which respondent's received from the three defendants in the original case. Illinois claims that respondent's recovery should be limited to one-third of the amount which Everest paid in settlement.

■ Illinois is wrong in this assertion because the purpose of awarding attorney's fees under Tex.Rev.Civ.Stat Ann. art. 8307 § 6a (Vernon Supp.1990), is to pay the plaintiff's attorney for the benefit "accruing" to the *carrier* as a result of the plaintiff's recovery or settlement of its third-party case. *See McCollum v. Baylor Univ. Medical Center,* 697 S.W.2d 22, 24–25 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); *Chambers v. Texas Employers Ins. Ass'n,* 693 S.W.2d 648, 650 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). A workers' compensation insurance carrier's release from future liability for death benefits, due to a claimant's procurement of a third-party recovery, constitutes a "subrogation recovery" thereby obligating the carrier, which did not intervene in the third-party action, for payment of the claimant's attorney's fees based upon the past and present cash value of future death benefits which the carrier was relieved from paying. *Vanguard Ins. Co. v. Humphrey,* 729 S.W.2d 344, 346 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.); *Ischy v. Twin City Fire Ins. Co.,* 718 S.W.2d 885, 888 (Tex.App.—Austin 1986, no writ); Tex.Rev. Civ.Stat.Ann. art. 8307 § 6a (Vernon Supp. 1990); *see also, Tucker v. Texas Employers Ins. Ass'n,* 768 S.W.2d 742, 744 (Tex. App.—Houston [1st Dist.] 1988, writ dism'd).

The present case is similar to the facts in the *Ischy* case. Ischy's widow brought a third party suit for the wrongful death of her husband against her husband's employer. Mrs. Ischy and the employer settled the third party claim. At the time of the settlement, Twin City Insurance Company (Twin City), the employer's worker's compensation carrier, had paid Mrs. Ischy over $12,000.00 in death benefits. Article 8307, § 6a allowed Twin City to recover the $12,-000.00 from Mrs. Ischy's settlement as its subrogated interest. After Ischy tendered

this amount to Twin City, her lawyer requested recovery of one-third of Twin City's recovery of its subrogation interest as attorney's fees.[1] Twin City refused to pay this amount.

The Austin Court of Appeals stated that art. 8307 § 6a benefits a worker's compensation carrier in two aspects when a worker settles a third-party claim. First, the worker must reimburse the carrier for all past benefits and medical expenses which he previously received from the carrier. Second, the worker may not receive any other benefits from the carrier until the third-party settlement amount is exhausted, because the settlement is treated as an advance against future benefits. The court reasoned that this recovery was a windfall especially when the carrier did not intervene in the third-party case. The Austin court cited *Chambers*, 693 S.W.2d at 650, for the proposition that the true value of a carrier's recovery of its interest in a third-party action included its release from liability for future benefits as well as reimbursement for all past benefits paid to the claimant. The court reasoned that the carrier's reimbursement entitles a claimant's attorney to one-third of the benefit accruing to the non-intervening carrier as a result of the claimant's attorney's efforts. The court reasoned by stating:

> [A] determination of the "benefit accruing" in section (b) [of art. 8307 § 6a] necessarily derives from a finding of the carrier's *true subrogation interest* under art. 8307 § 6a(a), the benchmark for calculating attorney's fees.

*Ischy*, 718 S.W.2d at 887. The claimant's attorney's pursuit of the third-party case directly benefits two parties—the claimant and the non-intervening carrier. We conclude that the carrier's "true subrogation interest" logically includes that portion of the workers' compensation benefits which the carrier saved as a direct result of the claimant's attorney's efforts. This result is grounded in equitable considerations.

Should this type of recovery not be allowed, the carrier would always benefit by allowing its interests to ride with the claimant's attorney's efforts and by not actively participating with its own counsel in the third-party action. Illinois' assertion has no basis in the law as stated in Article 8307, section 6a. Respondents may recover attorney's fees not to exceed one-third of the past and present cash value of future death benefits which Illinois saved as a consequence of respondent's settlement.

The motion for rehearing is overruled.

BENAVIDES, J., dissents.

BENAVIDES, Justice, dissenting.

The trial court by default judgment allowed the recovery of attorney's fees related to one-third of the $534,336.66 in future workers' compensation death benefits which petitioner, Illinois National Insurance Company, (Illinois) has been relieved from paying because of the settlement between Perez's survivors and certain third party defendants. The original opinion of this Court and the majority opinion on rehearing recognizes a subrogation recovery for the amount of death benefits Illinois has been relieved from paying pursuant to Article 8307 Section 6a. I do not believe that under Article 8307, Section 6a Illinois has a subrogation recovery nor subrogation right to recover for amounts not paid. Accordingly, Illinois should not pay attorney's fees for a "subrogation recovery" it has no right to recover. Since I believe the attorney's fees for the "subrogation recovery" alleged here do not arise under Article 8307, Section 6a, I would find error on the face of the record because the plaintiff did not allege a cause of action and the judgment on its face shows an unlawful recovery.

The petition purports to allege a cause of action for attorney's fees pursuant to Section 6a of Article 8307 of the workers' compensation statute, based on the amount

---

**1.** Article 8307 § 6a states that if an insurance company does not actively represent through counsel its interest in a third-party claim, the company shall pay the claimant's attorney a fee not to exceed one-third of the subrogation re-

covery. This compensates the claimant's attorney for the benefit which the insurance company enjoyed as a result of the claimant's efforts to negotiate and settle the third-party case.

that Illinois is relieved from paying as a result of the settlement. As discussed below, there is no such cause of action pursuant to Article 8307, Section 6a. A pleading which fails to state a cause of action cannot support a default judgment. *Stoner v. Thompson,* 578 S.W.2d 679 (Tex.1979); *Allied Bank of Dallas v. Pleasant Homes,* 757 S.W.2d 460, 462 (Tex.App.—Dallas 1988, no writ).

Similarly, the judgment states that this award of attorney's fees is in accordance with Section 6a of Article 8307. The judgment indicates the calculation of the judgment amount to include ⅓ of the amount Illinois would have paid. A judgment based on the erroneous pleadings is also an error. *See generally, Barrera v. Barrera,* 668 S.W.2d 445, 447 (Tex.App.—Corpus Christi 1984, no writ). Further, as discussed below, Section 6a does not provide for the calculation or award of attorney's fees in this manner; such calculation appearing on the face of the record is correctable by this Court.

Article 8307, Section 6a provides that when the claimant is represented by an attorney and the association's interest is not actively represented by an attorney, the association shall pay such fee to the claimant's attorney not to exceed one-third (⅓) of said subrogation recovery. Art. 8307 § 6a(a). Section 6a explicitly provides that a workers' compensation carrier may recover only: (1) past compensation benefits paid; (2) medical expenses paid; and (3) attorney's fees. *Jones v. Liberty Mut. Ins. Co.,* 745 S.W.2d 901, 902 (Tex.1988). Hence, the subrogation recovery referred to in Section 6a must consist only of past compensation benefits paid and medical expenses paid. *See generally, Providence Inst. for Sav. v. Sims,* 441 S.W.2d 516, 519 (Tex.1969) (subrogation of a person making payment is recognized to the extent of his payment); *McAllen State Bank v. Linbeck Constr. Corp.,* 695 S.W.2d 10, 24 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.) (bank subrogee was subrogated only to the extent of its payment).

Historically, the subrogation recovery from which attorney's fees were calculated was that monetary amount which was actually recouped by the workers' compensation carrier as a result of either settlement or trial. *See e.g. Buscher v. Bulldog Steel Products,* 682 S.W.2d 406, 406–07 (Tex. App.—Eastland 1984, writ ref'd n.r.e.) ($49,000 paid and recouped by carrier via settlement; remanded for attorney's fees to be apportioned from not more than one-third of $49,000); *Hartford Ins. v. Branton & Mendelsohn, Inc.,* 670 S.W.2d 699, 700–04 (Tex.App.—San Antonio 1984, no writ) (subrogated insurer recovered the total amount it had paid the worker, $83,593,-33; attorney's fees of 28.7% of recovery, $24,000 was proper); *Union Carbide Corp. v. Burton,* 618 S.W.2d 410, 412, 416 (Tex. Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) (carrier recouped $45,380.08 as reimbursement for workers' compensation benefits previously paid; attorney's fees of $13,500 from subrogated recovery appropriate, but remanded for proper apportionment). The actual subrogation recovery in this case, therefore, is $43,303.00, the amount that Illinois actually paid in the past for workers' compensation benefits and medical expenses.

In support of the majority's position that a release from future liability constitutes a subrogation recovery, it cites *Vanguard, Ischy,* and *Chambers,* and Article 8307 § 6a. *Vanguard,* 729 S.W.2d at 346; *Ischy,* 718 S.W.2d at 888; *Chambers,* 693 S.W.2d at 650. Although in each of these cases, the court did permit attorney's fees based on the amount that a carrier was relieved from paying, their analysis and determinations are based on language in Article 8307, Section 6a which is taken out of context. In all three cases, the courts applied that language found in subsection (b) regarding "the benefit accruing to the association" to determine that the carrier's subrogation recovery included unpaid future benefits. *Vanguard,* 729 S.W.2d at 346; *Ischy,* 718 S.W.2d at 888; *Chambers,* 693 S.W.2d at 650.

Subsection (b) applies when both the claimant and the carrier are represented by attorneys who actively participate in the

third party lawsuit.[1] Pursuant to subsection (b), the court is to apportion an attorney's fees allowable out of the association's subrogation recovery between such attorneys taking into account the benefit accruing to the association as a result of each attorney's service, the aggregate of such fees not to exceed thirty-three and one-third per cent (33⅓%) of the subrogated interest.

Traditionally, this subsection is interpreted as providing that the courts should assess the respective contributions of each attorney with regard to the subrogation recovery; in other words, whether recovery of the lien was due entirely to one attorney's efforts, or whether both participated and to what extent. *See e.g. Liquidation Div. of Bd. of Ins. v. Kronzer,* 744 S.W.2d 146, 148 (Tex.App.—Houston [14th Dist.] 1987, no writ); *Hartford Ins.,* 670 S.W.2d at 704; *International Ins. Co. v. Burnett and Ahders Assoc.,* 601 S.W.2d 199, 200–202 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.).

A court may not judicially amend a statute and add words that are not implicitly contained in the language of the statute. *Jones,* 745 S.W.2d 902; *Seay v. Hall,* 677 S.W.2d 19, 25 (Tex.1984). Only when it is necessary to give effect to the clear legislative intent can we insert additional words into a statutory provision. *Jones,* 745 S.W.2d at 902; *Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 552 (Tex.1981). There is no indication in Section 6a that the Legislature intended the carrier's subrogation recovery to include the amount that the carrier is released from paying in the future. Illinois had no subrogated interest in the $534,336.66. It cannot recover such amount and should not be charged for recovering what it cannot recover.

Therefore, I cannot agree with the majority that there is a cause of action for attorney's fees based on the amount that a carrier is released from paying in the future pursuant to Article 8307, Section 6a. It follows, therefore, that I cannot agree

with the majority that Article 8307 Section 6a authorizes the court to award attorney's fees based on the amount that the carrier is released from paying in the future. I would hold that there is error on the face of the pleadings and error on the face of the judgment in the award and calculation of attorney's fees. Accordingly, I would sustain Illinois' third point of error and reverse the default judgment to the extent it awards attorney's fees representing one-third of the amount Illinois has been relieved from paying, and affirm the award of attorney's fees of $14,434.33, based only on Illinois' actual subrogation recovery. Further, since the court allowed the Perezes to withdraw more than the proper amount of attorney's fees from the court's registry, I would affirm Illinois' fourth point of error complaining of the withdrawal of the excess amount.

---

**1.** Respondent's original petition recited in its paragraph IV, "At no time during the pendency of the lawsuit did Illinois National Insurance

Company intervene and assert any claim against Plaintiff or Defendant.